**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| 3M COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> NEXUS MEDICAL LLC, <br> VINASIA CHE TAO LLC, and <br> DOES 1-10 <br><br> Defendants. | §§§§§§§§§§§ Civil Action No. 1:20-cv-00697-LY |

**DECLARATION OF DAVID A. CRIST**

I, David A. Crist, pursuant to 28 U.S.C. § 1746 and upon penalty of perjury, declare as follows:

1. I am a resident of the State of Minnesota; over the age of 18; and competent to make this declaration. I could and would testify as to the matters set forth herein, if called upon to do so.

2. I am a Vice President and Chief Marketing Officer for the Safety and Industrial Business Group at 3M Company ("3M"). The information set forth herein is based on my personal knowledge obtained through the course of my duties at 3M, which include, among other things, 3M's: (i) brand-development and marketing efforts; (ii) trademark policies; (iii) sales and pricing guidelines; and (iv) efforts to assist in the battle against COVID-19. The information set forth herein is also based on my review of records and documents (including electronic records) maintained in the regular course of 3M's business, and the complaint in this lawsuit.

3. I submit this declaration in support of 3M Company's application for a temporary restraining order, temporary injunction and motion for expedited discovery against Defendants Nexus Medical LLC, VinAsia Che Tao LLC and John Does 1 through 10 (collectively, "Defendants") in the above-referenced action.

*3M Company*

4. 3M (then, Minnesota Mining and Manufacturing company) began over 100 years ago as a small-scale mining venture in Northern Minnesota. It has grown into an industry-leading provider of scientific, technical, and marketing innovations throughout the world.

5. 3M's portfolio includes more than 60,000 goods and services, ranging from household and school supplies, to medical devices and equipment. *See* **Exhibit 1** (*3M History*, 3M Company, available at https://www.3m.com/3M/en_US/company-us/about-3m/history/) (last visited on July 1, 2020).

*The 3M Brand and Marks*

6. 3M provides goods and services throughout the world under numerous brands, including well-known brands such as: ACE; POST-IT; SCOTCH; NEXCARE; and more. *See* **Exhibit 2** (*3M Featured Brands*, 3M Company, available at https://www.3m.com/3M/en_US/company-us/our-brands/) (last visited on July 1, 2020).

7. 3M's most famous and widely recognized brand is its eponymous "3M" brand. The 3M brand encompasses products and materials for a wide array of medical devices, supplies, and personal protective equipment ("PPE"), including, for example: stethoscopes; medical tapes; surgical gowns; blankets; bandages and other wound-care products; and respirators. *See* **Exhibit 3** (*3M Medical Products*, 3M Company, available at https://www.3m.com/3M/en_US/company-us/all-3m-products/~/All-3M-Products/ Health-

Care/Medical/?N=5002385+8707795+8707798+8711017+3294857497&rt=r3) (last visited on July 1, 2020).

8. 3M-branded products are highly visible throughout numerous hospitals, nursing homes, and other care facilities where patients, care providers, and procurement officers value and rely on the high quality and integrity associated with the 3M brand.

9. 3M employs strict quality-control standards in manufacturing all of its products, including its products used in the fields of healthcare and worker safety. As a result of this commitment to quality, 3M-brand N95 respirators are highly respected, widely used, and recommended by medical workers, public-health officials, and throughout the worker safety market.

10. Over the past century, 3M has invested hundreds of millions of dollars in advertising and promoting its 3M-brand products to customers throughout the world (including its 3M-brand N95 respirators) under the standard-character mark "3M" and the 3M design mark **3M** (together, the "3M Trademarks").

11. During this period, 3M's goods and services offered under its 3M Trademarks, in particular, have been the subject of widespread, unsolicited media coverage, and critical acclaim.

12. Products offered by 3M using its 3M Trademarks have also enjoyed enormous commercial success (including, without limitation, its range of 3M-brand N95 respirators).

13. To strengthen 3M's common-law rights in and to its famous 3M Trademarks, 3M has obtained numerous federal trademark registrations, including, without limitation: (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M mark in Int. Classes 9 and 10 for, inter alia, respirators (the "'329 Registration"); (ii) U.S. Trademark Reg. No. 2,692,036, which covers the 3M logo for, inter alia, a "full line of surgical masks, face shields, and respiratory

masks for medical purposes" (the "'036 Registration"); and (iii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, inter alia, respirators (the "534 Registration").

14. I attach hereto as **Exhibit 4** a true and correct copy of the '329 Registration. Pursuant to Section 15 of the Lanham Act, namely, 15 U.S.C. § 1065, on April 2 2014, the United States Patent and Trademark Office (the "PTO") issued a Notice of Acknowledgement of 3M's Declaration of Incontestability of the '329 Registration. *See* **Exhibit 5.**

15. I attach hereto as **Exhibit 6** a true and correct copy of the '036 Registration. Pursuant to Section 15 of the Lanham Act, namely, 15 U.S.C. § 1065, on April 2, 2014, PTO issued a Notice of Acknowledgement of 3M's Declaration of Incontestability of the '036 Registration. *See* **Exhibit 7**.

16. I attach hereto as **Exhibit 8** a true and correct copy of the '534 Registration. Pursuant to Section 15 of the Lanham Act, namely, 15 U.S.C. § 1065, on December 21, 2009, the PTO issued a Notice of Acknowledgement of 3M's Declaration of Incontestability of the. *See* **Exhibit 9**.

17. The general consuming public associates the 3M Trademarks uniquely with 3M and recognizes them as identifying 3M as the exclusive source of goods and services offered under the 3M Trademarks. Additionally, 3M has received public commendation and praise for its contributions to the COVID-19 pandemic response, particularly with respect to its production of 3M-brand N95 respirators. Based on the public commendation and praise, and widespread media coverage of 3M-brand N95 respirators during the COVID-19 pandemic, the public is more aware now than ever that 3M manufacturers N95 respirators and other PPE that is essential to protecting

healthcare personnel and workers from exposure to airborne particles including viruses like COVID-19.

***Defendant's Misconduct is Causing Immediate and Irreparable Harm to 3M—Especially in this District***

18. By falsely holding themselves out as a party that is affiliated with or authorized by 3M to sell 3M-branded respirators, and using 3M's trademarks to advance this false representation of affiliation, Defendants are causing immediate, irreparable, and immeasurable harm to 3M's brand and reputation.

19. Defendants, by seeking to charge $2.50 for 3M N95 1860 respirators, are price-gouging at nearly *200%* of their 3M single-case U.S. list price. Defendants' price-gouging activity is particularly harmful to 3M at this unprecedented time. That is because Defendants' conduct disrupts the supply of respirators by, among other things, (a) wasting 3M and public resources devoted to identifying fraudulent pricing and inauthentic offers and (b) squandering public and private monies used to pay grossly excessive prices for essential respirators.

20. Defendants' conduct is also particularly damaging to the 3M brand's reputation in Texas. When customers and government officials observe price-gouging by third parties, particularly those that hold themselves out as affiliated with or authorized by 3M (as Defendants are doing), they will inevitably draw the false impression that this behavior reflects pricing changes by 3M in response to the COVID-19 pandemic. The false impressions are so strong that in this instance, as in others, public officials are complaining to 3M about the unlawful behavior of parties that have no relationship to 3M. These false impressions are harming 3M's reputation and it is unknown how long it may take, if ever, to repair that damage, what measures, if any, will work,

and how much those measures may cost. Under the circumstances, it is impossible to measure the resulting damage to 3M.

21. There are already widespread reports of counterfeit, inferior-quality respirators being sold at grossly inflated prices. And, despite having not increased the prices it charges for its 3M-brand N95 respirators, 3M has already been subject to unfounded public criticism in response to third-party price-gouging.

22. The 3M brand is also irreparably and immeasurably harmed by Defendants' conduct in that the purported 3M-branded products that Defendants are advertising for sale may not exist and/or are counterfeit. In addition to threatening the credibility of the 3M brand, such conduct results in a diversion of critical public resources, which places lives at risk. These resources include the time spent by public officials to pursue false/fraudulent leads and the money spent to purchase products at inflated prices. Additionally, this waste of resources further diminishes the ability of public officials and procurement officers to investigate and identify other counterfeit and inferior quality supplies as buyers are pressured to place large orders swiftly for essential PPE.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this declaration was executed this 1st day of July, 2020.

_____
DAVID A. CRIST