IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| 3M COMPANY, § § Plaintiff, § § v. § § NEXUS MEDICAL LLC, § VINASIA CHE TAO LLC, and § DOES 1-10 § § Defendants. § | Civil Action No. 1:20-cv-00697-LY |

## ~~[REDACTED]~~ ORDER ON 3M COMPANY'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AGAINST NEXUS MEDICAL LLC

Came on for consideration Plaintiff, 3M Company's ("3M") Motion for Entry of Final Default Judgment against Defendant Nexus Medical LLC ("Nexus Medical") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure;

WHEREAS Nexus Medical has been duly served with a summons and complaint, and having failed to answer, plead or otherwise defend within the required time;

WHEREAS the well-pleaded allegations in 3M's Complaint are accepted as true; and

WHEREAS 3M's pleadings have put forth evidence and arguments supporting its request for a final judgment and that the following permanent injunction be entered against Nexus Medical's future conduct.

NOW THEREFORE, based on the foregoing and the sources cited herein and by 3M, the Court makes the following findings of fact and conclusions of law in support of the permanent injunction and other relief granted hereafter:

## I. PARTIES AND JURISDICTION

1. Plaintiff 3M Company is a Delaware corporation, with its principal place of business and corporate headquarters located at 3M Center, St. Paul, Minnesota 55144. 3M is a diversified technology company with a global presence and is among the leading manufacturers of products for many of the markets it serves, including personal protective equipment ("PPE") such as 3M-brand N95 respirators.

2. Defendant Nexus Medical is a Texas limited liability company. Purportedly, Nexus Medical is headquartered in Fredericksburg, Texas and, according to its website, has its primary address at 108 E Trailmoor, Suite 6, Fredericksburg, Texas 78264.

3. The claims for trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, and false advertising, respectively, asserted in Counts I – IV, arise under the Trademark Act of 1946 (as amended; the "Lanham Act"), namely, 15 U.S.C. §§ 1051 *et seq.* Accordingly, this Court has original subject-matter jurisdiction over Counts I – IV pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 15 U.S.C. § 1121(a).

4. The claims for trademark dilution and trademark infringement, asserted in Counts V – VII, arise under Texas law, and are so related to the federal claims asserted in Counts I – IV, that they form part of the same case or controversy. Accordingly, this Court has supplemental jurisdiction over Counts V – VII pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

5. This Court also has subject matter jurisdiction on the separate and independent ground of diversity of citizenship pursuant to 28 U.S.C. § 1332(a). There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Nexus Medical has purposefully availed itself of the privilege of transacting business within the State of Texas, including in this District. Nexus Medical has also committed

and intentionally directed tortious acts towards residents of the State of Texas, including in this District. 3M's claims arise out of and relate to Nexus Medical's transaction of business and tortious acts committed within the State of Texas, including in this District. Based on the foregoing, this Court has long-arm personal jurisdiction over Nexus Medical.

7. A substantial part of the events giving rise to the claims asserted occurred in this District. Accordingly, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

8. Nexus Medical is subject to personal jurisdiction in this District. Accordingly, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

## II. FACTUAL BACKGROUND

The Factual Background set forth herein is according to 3M, which facts the Court finds are well-supported and accepts as true for purposes of this judgment.

### A. The 3M Brand and 3M Trademarks

9. 3M has grown from humble beginnings in 1902 as a small-scale mining venture in Northern Minnesota to what it is today, namely: an industry-leading provider of scientific, technical, and marketing innovations throughout the world. Today, 3M offers over 60,000 products, ranging from household and school supplies, to industrial and manufacturing materials, to critical medical supplies and protective equipment.

10. 3M offers its vast array of goods and services throughout the world under numerous brands, including, for example: ACE; POST-IT; SCOTCH; NEXCARE; and more. Notwithstanding the widespread goodwill and resounding commercial success enjoyed by these brands, 3M's most famous and widely recognized brand is its eponymous "3M" brand.

11. The 3M brand is associated with products and materials for a wide variety of medical devices, supplies, and PPE, including, for example: respirators; stethoscopes; medical tapes; surgical gowns, blankets, and tape; bandages and other wound-care products; and many

more. As a result, 3M-brand products are highly visible throughout hospitals, nursing homes, and other care facilities where patients, care providers, and procurement officers value and rely upon the high quality and integrity associated with the 3M brand.

    a. <u>3M Brand Respirators</u>

12. Over the past century, 3M has invested hundreds of millions of dollars in advertising and promoting its 3M-brand products to consumers throughout the world (including, without limitation, its 3M-brand N95 respirator) under the standard-character mark "3M" and the 3M logo shown below (together, and as described more particularly in paragraph 41 below, the "<u>3M Trademarks</u>"):

**3M**

13. For decades, products offered under the 3M name and 3M Trademarks have enjoyed enormous commercial success (including, without limitation, 3M-brand N95 respirators). Indeed, in 2019 alone, sales by 3M exceeded billions of dollars with the vast bulk of such products sold under and in connection with the 3M Trademarks.

14. Over the same period of time, products offered under the 3M name and 3M Trademarks have regularly been the subject of widespread, unsolicited media coverage and critical acclaim.

15. Based on the foregoing, consumers associate the 3M Trademarks uniquely with 3M and recognize them as identifying 3M as the exclusive source of goods and services offered under the 3M Trademarks. Based on the foregoing, the 3M name and 3M Trademarks have also become famous among consumers not only in Texas but throughout the United States.

16. To strengthen 3M's common-law rights in and to its famous 3M Trademarks, 3M has obtained numerous federal trademark registrations, including, without limitation: (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M trademark in Int. Classes 9 and 10 for, *inter alia*, respirators (the "'329 Registration"); (ii) U.S. Trademark Reg. No. 2,692,036, which covers the 3M logo for, *inter alia*, a "full line of surgical masks, face shields, and respiratory masks for medical purposes" (the "'036 Registration"); and (iii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, *inter alia*, respirators (the "'534 Registration").

17. Each of the foregoing Registrations is valid, in effect, and on the Principal Trademark Register.

18. Each of the foregoing Registrations is "incontestable" within the meaning of 15 U.S.C. § 1065. Accordingly, each Registration constitutes conclusive evidence of: (i) 3M's ownership of the 3M Trademarks; (ii) the validity of the 3M Trademarks; (iii) the validity of the registration of the 3M Trademarks; and (iv) 3M's exclusive right to use the 3M name and 3M Trademarks throughout the United States for, *inter alia*, respirators.

19. 3M's famous name and the 3M Trademarks do more than identify 3M as the exclusive source of goods and services offered thereunder. Indeed, the famous 3M name and 3M Trademarks also signify to consumers that 3M-brand products offered are of the highest quality and adhere to the strictest quality-control standards. Now, more than ever, consumers rely on the famous 3M name and 3M Trademarks' ability to signify that products offered under the 3M name and 3M Trademarks are of the same high quality that consumers have come to expect of 3M over the past century.

B.  **Service of Process and Failure to Answer**

20. On July 7, 2020, Nexus Medical was served with a summons and a copy of Plaintiff's Original Complaint by personal service.

21. On July 8, 2020, a corporate representative for Nexus Medical attended a telephonic conference with the Court which indicates to the Court that Nexus Medical was and is actually aware of this lawsuit and the claims made against it.

22. Under the Federal Rules of Civil Procedure, Nexus Medical was required to file its answer or a motion relieving it of its obligation to answer by July 28, 2020. Nexus Medical did not make an appearance, file an answer or file any other responsive pleading at that time nor has it as of the date of this judgment.

C.  **Nexus Medical's Unlawful Conduct**

23. Long after 3M began using the 3M Trademarks, and after 3M had registered the 3M Trademarks, Nexus Medical began advertising, marketing attempts to claim that they represent 3M, and engaged in unauthorized use of 3M's name and famous trademarks, to perpetrate a false and deceptive scheme on unwitting customers and consumers during the global COVID-19 pandemic.

24. Nexus Medical has used 3M's Trademark by posting 3M products on its website, when it is not an authorized 3M distributor. Nexus Medical also represented to unwitting customers that it had contractual relationships with 3M and represented a false affiliation with 3M and false access to 3M's products.

25. Nexus Medical used the 3M Trademarks and 3M Brand to profiteer from 3M's reputation in the middle of an unprecedented health crisis.

26. In correspondence addressed to 3M for purchase of over six billion dollars' worth of 3M respirators, Nexus Medical represented it had previously assisted State Governments,

Hospital Groups and First Responder organizations to source masks for their PPE needs. Nexus Medical's sham attempt to legitimize its operations is only further corroboration that the entire purported operation is a scam. Nexus Medical is not a 3M authorized distributor.

27. While Nexus Medical sought to purchase over six billion dollars' worth of N95 respirators from 3M at $1.27 a respirator, it was also attempting to find buyers willing to purchase N95 respirators at the price of at least $2.50 each. More than double 3M's published list prices.

28. Nexus Medical has also falsely represented to have contractual relationships with 3M and fraudulently stated it had previously placed an order for production of 3M 1860 masks in the one hundred million mask allotments or more. Nexus Medical did not have access through such exorbitant number of respirators which exceeds 3M's production capacity at the time.

### D. Effect of Nexus Medical's Activities on 3M and the Public

29. Nexus Medical's infringing conduct is or was likely to cause confusion, to cause mistake, and/or to deceive consumers, at least as to some affiliation, connection or association of Nexus Medical with 3M, or as to the origin, sponsorship, or approval of the products and/or services of Nexus Medical by 3M.

30. Contrary to Nexus Medical's representations 3M has never had any affiliation or contractual relationship whatsoever with Nexus Medical whose fraudulent scheme during a global pandemic represents not only a new low in rapacious profiteering, but also endangers lives and wastes precious time and resources by diverting buyers from legitimate sources of much-needed respirators

31. Nexus Medical's infringing conduct has falsely indicated to consumers that Nexus Medical' services are affiliated, connected or associated with 3M, or are sponsored, endorsed, or approved by 3M, or are in some manner related to 3M.

32. Nexus Medical's infringing conduct has enabled Nexus Medical to trade on and receive the benefit of goodwill in the 3M Trademarks, which has been built up at great labor and expense over more than a century. Use of the infringing marks by Nexus Medical in the manner described above has also enabled Defendant to gain acceptance for their products and/or services, not solely on their own merits, but on the reputation and goodwill of 3M and the 3M Trademarks.

33. Nexus Medical's infringing conduct has prevented 3M from controlling the nature and quality of goods and/or services provided as a result of that conduct and placed the valuable reputation and goodwill of 3M in the hands of Nexus Medical, over whom 3M has no control.

34. Nexus Medical's conduct has also impaired the distinctiveness of 3M's famous 3M Trademarks and harmed the reputation of the 3M Trademarks.

35. Nexus Medical has provided no assurance that they will not resume use of the infringing marks and the related infringing conduct complained of herein, either at the same location or another location.

36. Nexus Medical's conduct has caused irreparable injury to 3M and, unless restrained by this Court, will continue to cause irreparable injury to 3M. There is no adequate remedy at law for this injury.

37. Nexus Medical's activities have been willful, intentional, and in bad faith, with full knowledge and conscious disregard of 3M's rights. In view of the egregious nature of Nexus Medical's actions, this is an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

### III. OTHER RELIEF

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

38. Pursuant to 15 U.S.C. § 1118, Nexus Medical shall destroy any unauthorized goods and materials within its possession, custody, or control that bear, feature, and/or contain any copy or colorable imitation of the 3M Trademarks.

39. Nexus Medical is ordered to file with this Court and to serve upon 3M, within thirty (30) days after the service on Nexus Medical of this Judgment, a report in writing and under oath setting forth in detail the manner and form in which Nexus Medical complied with this Judgment;

40. Additionally, 3M is awarded reasonable and necessary attorneys' fees and costs in the amount of **$163,365.03**.

41. This judgment shall also entitle 3M to any interest accrued.

42. Taxable court costs, to be calculated by the Court Clerk, shall be paid by Nexus Medical.

### IV. PERMANENT INJUNCTION

IT IS FURTHER ORDERED, ADJUDGED AND DECREED as follows:

Nexus Medical, its agents, servants, employees, officers, and all persons and entities in concert and participation with them are hereby permanently:

- Enjoined from using the 3M Trademarks and any other word, name, symbol, device, or combination thereof that is confusingly similar to the 3M Trademarks, for, on, or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, Plaintiff's 3M-brand N95 respirators;

- Enjoined from engaging in any false, misleading, or deceptive conduct in connection with 3M and its products, including, without limitation, representing

itself as being an authorized distributor, vendor, agent, representative, retailer, or licensee of 3M or any of 3M's products, including, without limitation, 3M-brand N95 respirators;

- Enjoined from representing to have an association or affiliation with, sponsorship by, or connection with, 3M or any of 3M's products;

- Enjoined from engaging in any false, misleading, and/or deceptive conduct in connection with 3M and its products, including, without limitation, representing that, or leaving uncorrected any representation that, Defendants have access to purchasing or otherwise acquiring 3M products, including, without limitation 3M respirators, whether from purported 3M distributors or pursuant to any other means; and

- Enjoined from representing that 3M has increased the price of its 3M-brand N95 respirators.

43. The Court hereby makes an express determination that there is no just reason for delay and an express direction for entry of this judgment forthwith.

44. This is a final judgment and all relief not expressly granted is hereby denied.

SIGNED on this the 25th day of Sept, 2020 at 1:40 p.m.

_____
U.S. District Judge Lee Yeakel