

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| 3M COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:20-cv-1097-LY |
| | § | |
| VINASIA CHE TAO LLC | § | |
| | § | |
| Defendant. | § | |

## CONSENT JUDGMENT AND PERMANENT INJUNCTION

On this date, hereinafter set forth, came on for the Court's consideration Plaintiff 3M Company ("3M") and Defendant Vin Asia Che Tao LLC's ("VinAsia") Motion for Entry of Consent Judgment and Permanent Injunction (the Motion"). The Court finds, in part based upon the Parties' unqualified stipulation in this Consent Judgment and Permanent Injunction (the "Consent Judgment"), that the Court has jurisdiction over the claims and controversies addressed in this Consent Judgment and that the Consent Judgment is supported by the pleadings and the agreement of the parties.

WHEREAS, 3M filed cause no. 1:20-cv-00697 which was later severed into above-captioned case against VinAsia in the Western District of Texas, Austin Division.

WHEREAS, 3M filed its Original Complaint on June 30, 2020 (Dkt. 1, Cause No. 1:20-cv-00697) seeking injunctive relief and monetary damages against VinAsia Che Tao LLC, for infringement of 3M's famous federally-registered 3M trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for dilution under Section 43(c) of the

Lanham Act, 15 U.S.C. § 1125(c), and for substantial and related claims under the statutory and common law of the State of Texas.

WHEREAS on September 25, 2020, a default judgment was entered against Nexus Medical (Dkt. 42, Cause No. 1:20-cv-00697).

WHEREAS on November 3, 2020, a final judgment and order to sever was entered (Dkt. 45, Cause No. 1:20-cv-00697) and the above-captioned cause number was assigned to this matter and VinAsia remained as the sole defendant in this action.

WHEREAS, VinAsia states that it no longer markets or sells 3M products, and that it has no intention of marketing or selling 3M products, now or in the future.

WHEREAS, VinAsia agreed to the entry of this Consent Judgment and Permanent Injunction.

WHEREAS, VinAsia states that they are stipulating to the entry of this Consent Judgment and Permanent Injunction without trial or adjudication of any claim, defense or issue of law or fact.

NOW, THEREFORE, VinAsia and 3M having requested the Court to enter this Consent Judgment and Permanent Injunction, the Court HEREBY FINDS:

### I. PARTIES AND JURISDICTION

1. Plaintiff 3M Company is a Delaware corporation, with its principal place of business and corporate headquarters located at 3M Center, St. Paul, Minnesota 55144. 3M is a diversified technology company with a global presence and is among the leading manufacturers of products for many of the markets it serves, including personal protective equipment ("PPE") such as 3M brand N95 respirators.

2. Defendant VinAsia is a Wyoming limited liability company. According to its website, VinAsia is a "USA international trading company in Texas, USA . . . and import/export

trade consultant." According to its Food and Drug Administration ("FDA") registration, it operates out of 30 N Gould St., Suite 9364, Sheridan, WY, 82801.

3. The claims for trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, and false advertising, respectively, asserted in Counts I – IV, arise under the Trademark Act of 1946 (as amended; the "Lanham Act"), namely, 15 U.S.C. §§ 1051 *et seq*. Accordingly, this Court has original subject-matter jurisdiction over Counts I – IV pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 15 U.S.C. § 1121(a).

4. The claims for trademark dilution and trademark infringement, asserted in Counts V – VII, arise under Texas law and are so related to the federal claims asserted in Counts I – IV, that they form part of the same case or controversy. Accordingly, this Court has supplemental jurisdiction over Counts V – VII pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

5. This Court also has subject matter jurisdiction on the separate and independent ground of diversity of citizenship pursuant to 28 U.S.C. § 1332(a). There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. VinAsia has purposefully availed itself of the privilege of transacting business within the State of Texas, including in this District. VinAsia has also committed and intentionally directed tortious acts towards residents of the State of Texas, including in this District. 3M's claims arise out of and relate to VinAsia's transaction of business and tortious acts committed within the State of Texas, including in this District. Based on the foregoing, this Court has long-arm personal jurisdiction over VinAsia.

7. A substantial part of the events giving rise to the claims asserted occurred in this District. Accordingly, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## II. FACTUAL BACKGROUND

The Factual Background set forth herein is according to 3M, which facts the Court finds are well-supported and accepts as true for purposes of this judgment.

### A. The 3M Brand and 3M Trademarks

8. 3M has grown from humble beginnings in 1902 as a small-scale mining venture in Northern Minnesota to what it is today, namely: an industry-leading provider of scientific, technical, and marketing innovations throughout the world. Today, 3M offers over 60,000 products, ranging from household and school supplies, industrial and manufacturing materials, and critical medical supplies and protective equipment.

9. 3M offers its vast array of goods and services throughout the world under numerous brands, including, for example: ACE; POST-IT; SCOTCH; NEXCARE; and more. Notwithstanding the widespread goodwill and resounding commercial success enjoyed by these brands, 3M's most famous and widely recognized brand is its eponymous "3M" brand.

10. The 3M brand is associated with products and materials for a wide variety of medical devices, supplies, and PPE, including, for example: respirators; stethoscopes; medical tapes; surgical gowns, blankets, and tape; bandages and other wound-care products; and many more. As a result, 3M brand products are highly visible throughout hospitals, nursing homes, and other care facilities where patients, care providers, and procurement officers value and rely upon the high quality and integrity associated with the 3M brand.

#### a. 3M Brand Respirators

11. Over the past century, 3M has invested hundreds of millions of dollars in advertising and promoting its 3M brand products to consumers throughout the world (including, without limitation, its 3M brand N95 respirator) under the standard-character mark "3M" and the

3M logo shown below (together, and as described more particularly in paragraph 41 below, the "3M Trademarks"):

**3M**

12.     For decades, products offered under the 3M name and 3M Trademarks have enjoyed enormous commercial success (including, without limitation, 3M brand N95 respirators). Indeed, in 2019 alone, sales by 3M exceeded billions of dollars with the vast bulk of such products sold under and in connection with the 3M Trademarks.

13.     Over the same period of time, products offered under the 3M name and 3M Trademarks have regularly been the subject of widespread, unsolicited media coverage, and critical acclaim.

14.     Based on the foregoing, consumers associate the 3M Trademarks uniquely with 3M and recognize them as identifying 3M as the exclusive source of goods and services offered under the 3M Trademarks. Based on the foregoing, the 3M name and 3M Trademarks have also become famous among consumers, not only in Texas but throughout the United States.

15.     To strengthen 3M's common-law rights in and to its famous 3M Trademarks, 3M has obtained numerous federal trademark registrations, including, without limitation: (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M trademark in Int. Classes 9 and 10 for, *inter alia*, respirators (the "'329 Registration"); (ii) U.S. Trademark Reg. No. 2,692,036, which covers the 3M logo for, *inter alia*, a "full line of surgical masks, face shields, and respiratory masks for medical purposes" (the "'036 Registration"); and (iii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, *inter alia*, respirators (the "'534 Registration").

16. Each of the foregoing Registrations is valid, in effect, and on the Principal Trademark Register maintained by the United Stated Patent and Trademark Office.

17. Each of the foregoing Registrations is "incontestable" within the meaning of 15 U.S.C. § 1065. Accordingly, each Registration constitutes conclusive evidence of: (i) 3M's ownership of the 3M Trademarks; (ii) the validity of the 3M Trademarks; (iii) the validity of the registration of the 3M Trademarks; and (iv) 3M's exclusive right to use the 3M name and 3M Trademarks throughout the United States for, *inter alia*, respirators.

18. 3M's famous name and the 3M Trademarks do more than identify 3M as the exclusive source of goods and services offered thereunder. Indeed, the famous 3M name and 3M Trademarks also signify to consumers that 3M brand products offered are of the highest quality and adhere to the strictest quality-control standards. Now, more than ever, consumers rely on the famous 3M name and 3M Trademarks' ability to signify that products offered under the 3M name and 3M Trademarks are of the same high quality that consumers have come to expect of 3M over the past century.

19. Long after 3M began using the 3M Trademarks, and after 3M had registered the 3M Trademarks, VinAsia began marketing attempts to claim that they represent 3M—or were an authorized sub-distributor— and engaged in an unauthorized use of 3M's name and famous trademarks, to perpetrate a false and deceptive scheme on unwitting customers and consumers during the global COVID-19 pandemic.

20. VinAsia also represented to unwitting customers that it had contractual relationships with 3M and represented a false affiliation with 3M and false access to 3M's products.

21.   VinAsia used the 3M Trademarks and 3M brand to profiteer from 3M's reputation in the middle of an unprecedented health crisis.

22.   VinAsia conspired with Nexus Medical LLC to represent to unwitting customers that it had access to millions of 3M respirators. Neither VinAsia nor Nexus Medical had access to 3M products as authorized distributors.

23.   VinAsia thus adopted and began using the 3M Trademarks in US commerce. VinAsia represented or implied that they had an association or affiliation with, sponsorship by, and/or connection with, 3M and 3M's products. VinAsia, in representations concerning 3M respirators, provided a pricing scheme inconsistent and inflated in comparison to 3M's price structure, thus represented or implied that 3M had increased the prices of its N95 respirator masks.

24.   VinAsia's conduct caused, and if not ceased, is likely to continue to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of VinAsia's goods and has deceived the relevant consuming public into believing, mistakenly, that VinAsia's goods and associated conduct originate from, are associated or affiliated with, or are otherwise authorized by 3M. VinAsia's conduct is also likely to cause confusion or deceive consumers as to the pricing and value of 3M products. Further, VinAsia's conduct is likely to dilute the distinctive quality of and tarnish the reputation of, 3M's famous 3M mark.

25.   The foregoing conduct by Defendant constitutes trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), unfair competition and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and Texas common law.

### III.   AFFIRMATIVE RELIEF

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

26.   Pursuant to 15 U.S.C. § 1118, VinAsia Che Tao LLC shall destroy any unauthorized goods and materials within its possession, custody, or control that bear, feature, and/or contain any copy or colorable imitation of the 3M Trademarks.

27.   3M is awarded and shall recover from VinAsia the amount of $850,000.00 in actual damages.

28.   This judgment shall also entitle 3M to post-judgment interest at the legal rate.

29.   Taxable court costs, to be calculated by the Court Clerk, shall be paid by VinAsia.

### IV.   PERMANENT INJUNCTION

IT IS FURTHER ORDERED, ADJUDGED AND DECREED as follows:

30.   VinAsia Che Tao LLC, its agents, servants, employees, officers, specifically including: Mario Gasca, Robert Nguyen, Sofia Nguyen, Mr. Kim, and all persons and entities in concert and participation with them are hereby permanently:

- Enjoined from using the 3M Trademarks and any other word, name, symbol, device, or combination thereof that is confusingly similar to the 3M Trademarks, for, on, or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, Plaintiff's 3M brand N95 respirators;

- Enjoined from engaging in any false, misleading, or deceptive conduct in connection with 3M and its products, including, without limitation, representing itself as being an authorized distributor, vendor, agent, representative, retailer, or licensee of 3M or any of 3M's products, including, without limitation, 3M brand N95 respirators;

- Enjoined from representing to have an association or affiliation with, sponsorship by, or connection with, 3M or any of 3M's products;
- Enjoined from engaging in any false, misleading, and/or deceptive conduct in connection with 3M and its products, including, without limitation, representing that, or leaving uncorrected any representation that, Defendant has access to purchasing or otherwise acquiring 3M products, including, without limitation 3M respirators, whether from purported 3M distributors or pursuant to any other means; and
- Enjoined from representing that 3M has increased the price of its 3M brand N95 respirators.

31. The Court hereby makes an express determination that there is no just reason for delay and an express direction for entry of this judgment forthwith.

32. This is a final judgment and all relief not expressly granted is hereby denied.

SIGNED *August 25*, 2021

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Dated: August 24, 2021

**AGREED BY:**

**NORTON ROSE FULBRIGHT US LLP**

/s/ *Michael W. O'Donnell*
Michael W. O'Donnell
State Bar No. 24002705
mike.odonnell@nortonrosefulbright.com
Aimeé Vidaurri
State Bar No. 24098550
aimee.vidaurri@nortonrosefulbright.com
Frost Tower
111 W. Houston Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 224-5575
Facsimile: (210) 270-7205

Paul Trahan
State Bar No. 24003075
Paul.trahan@nortonrosefulbright.com
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 536-5288
Facsimile: (512) 536-4598

*On behalf of Plaintiff 3M Company*

**AGREED BY:**

**LIBBY SPARKS WILLIS STARNES PLLC**

/s/ Ryan A. Starnes
Ryan A. Starnes
State Bar No. 24070669
rstarnes@libbysparks.com
J. Brad Bryan
State Bar No. 24073254
bbryan@libbysparks.com
5950 Berkshire Lane, Suite 200
Dallas, Texas 75225

*On behalf of Defendant VinAsia Che Tao LLC*